# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARISSA SCHUSTER,<br><br>    Petitioner,<br><br>    v.<br><br>DEBORAH K. JOHNSON,<br><br>    Respondent. | Case No. 1:12-cv-01482-AWI-SAB-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING APPLICATION OF <u>MCQUIGGIN V. PERKINS</u><br><br>AMENDED FINDINGS AND RECOMMENDATION REGARDING EQUITABLE TOLLING |

Petitioner is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

## BACKGROUND

Petitioner Larissa Schuster is a California state prisoner serving a life sentence without the possibility of parole for first-degree murder carried out for financial gain. On February 28, 2011, the California Court of Appeal, Fifth Appellate District, affirmed the judgment. <u>People v. Schuster</u>, No. F055692, 2011 WL 680211 (Cal. Ct. App. Feb. 28, 2011). On June 8, 2011, the California Supreme Court denied the petition for review. (LD[1] 4). Petitioner did not file a petition for writ of certiorari with the United States Supreme Court and she did not file any state post-conviction collateral petitions. Thus, Petitioner's conviction became final on September 6, 2011, when the ninety-day period to file a petition for writ of certiorari with the United States

---

[1] "LD" refers to the documents lodged by Respondent on December 21, 2012.

1

Supreme Court expired. Pursuant to the one-year limitations period under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner had until September 6, 2012, to file her federal habeas petition, absent tolling. 28 U.S.C. § 2244(d)(1)(A).

On September 7, 2012, Petitioner filed the instant petition for writ of habeas corpus. (ECF No. 1). On December 14, 2012, Respondent filed a motion to dismiss the petition as untimely. (ECF No. 15). On May 17, 2013, the Magistrate Judge issued a Findings and Recommendation that Respondent's motion to dismiss be granted, finding that the miscalculation in this case "is precisely the type of garden-variety mistake for which no equitable tolling is warranted." (ECF No. 30 at 6).[2] On February 19, 2015, the District Judge issued an order adopting the Magistrate Judge's analysis in the Findings and Recommendation. (ECF No. 36). However, because McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), was decided after the Findings and Recommendation was issued, the District Judge referred the matter back for briefing with respect to McQuiggin and for the undersigned to issue a findings and recommendation regarding the application of McQuiggin to this case. The District Judge also indicated that if the undersigned believes that relevant facts were not adequately considered in the Findings and Recommendation, then the undersigned may issue amended findings regarding equitable tolling.

On February 24, 2015, the undersigned set a briefing schedule. (ECF No. 37). On May 8, 2015, Petitioner asked the Court for the opportunity to brief additional issues in light of Luna v. Kernan, 784 F.3d 640 (9th Cir. 2015). (ECF No. 40). On June 26, 2015, the Court granted Petitioner's request for additional briefing regarding the application of Luna. (ECF No. 45).

## II.

## DISCUSSION

### A. Application of McQuiggin v. Perkins

In McQuiggin v. Perkins, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." McQuiggin, 133 S. Ct. at 1928. "[A]

---

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

1  petitioner does not meet the threshold requirement unless he persuades the district court that, in
2  light of the new evidence, no juror, acting reasonably, would have voted to find him guilty
3  beyond a reasonable doubt." Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Both
4  Petitioner and Respondent agree that McQuiggin does not apply to this case. (ECF No. 50 at 1
5  n.1; ECF No. 55 at 4).

6  Based on the foregoing, the Court finds that McQuiggin is not applicable to the instant
7  case.

**B. Equitable Tolling**

In referring this matter back to the undersigned, the District Judge indicated that the undersigned may issue amended findings regarding equitable tolling if relevant facts were not adequately considered in the Findings and Recommendation. Petitioner now offers new information which was not previously presented to the Court. In the interests of justice and judicial efficiency, the Court will undertake anew the equitable tolling analysis on the full record currently before the Court and in light of the Ninth Circuit's recent decision in Luna v. Kernan, 784 F.3d 640 (9th Cir. 2015).[3]

1. Factual Basis

Given the fact-intensive nature of equitable tolling claims, Sossa v. Diaz, 729 F.3d 1225, 1229-30 (9th Cir. 2013), the Court will set forth the facts underlying Petitioner's claim.

On June 8, 2011, the petition for review was denied by the California Supreme Court, and appellate counsel sent Petitioner a letter informing her that his appointed representation had terminated. He also explained her options if she wished to pursue her case in federal court. (ECF No. 19 at 19). Petitioner served time in prison with Susan Carter, who went on to establish the Foundation of Inmate Advocacy ("FIA") in September 2011 after her release from prison and served as FIA's founding director. (ECF No. 50-1 at 2 ¶ 6; ECF No. 22 at 2 ¶ 1). Ms. Carter had

---

[3] The Court notes that although Luna is applicable to the instant case, the extraordinary circumstance analysis of the Findings and Recommendation (ECF No. 30) and its recommendation that the petition be dismissed is not altered by Luna, which reaffirmed the caselaw that was applied in the Findings and Recommendation. However, upon further review, the Court revisits its analysis of the diligence prong of the equitable tolling test. (ECF No. 30 at 7:1-16). The appropriate inquiry concerns the acts of Petitioner rather than those of FIA. See Luna, 784 F.3d at 649-50 (in case where attorney misconduct caused the untimeliness, the court looked to Petitioner's actions to determine diligence); Doe v. Busby, 661 F.3d 1001, 1013 (9th Cir. 2011).

3

1 been admitted to the State Bar of California in 1979, but she resigned with charges pending in
2 1997 and has not been reinstated. (ECF No. 51 at 2). Sometime around October 2011, Petitioner
3 consulted with FIA to prepare her federal habeas petition. (ECF No. 50-1 at 1¶ 2). Petitioner's
4 parents gave FIA a $500.00 "donation[4] . . . for legal services for the benefit of Larissa Schuster."
5 (ECF No. 51 at 9).

6       In April 2012, FIA began discovery and wrote to Petitioner's trial attorney, Roger
7 Nuttall, seeking information about Petitioner's case. (ECF No. 22 at 3 ¶¶ 7-8, 20). Thereafter,
8 throughout the summer of 2012, FIA communicated with Mr. Nuttall regarding acquisition of
9 transcripts and other issues regarding Petitioner's case. (ECF No. 19 at 16 ¶ 10). As FIA was
10 unable to obtain transcripts from Mr. Nuttall's office, Petitioner mailed her transcripts to FIA in
11 July 2012. (ECF No. 22 at 4 ¶ 10, 30, 32).

12       On May 4, 2012, FIA staff attorney Amy Broderick calculated Petitioner's deadline as
13 June 8, 2012, one year from when review was denied by the California Supreme Court on June 8,
14 2011. (ECF No. 22 at 10). The next day, Ms. Carter informed attorney Erik Harper, who had
15 been assigned to Petitioner's case, that the "AEDPA deadline is probably within a month (Amy
16 has been looking into this)." (Id. at 12). The first reference in the record before the Court to the
17 deadline being September 8, 2012, is in an email Ms. Carter sent to Ms. Broderick on May 11,
18 2012. (Id. at 22). The September 8 deadline was also included in a message left with Mr.
19 Nuttall's office in June 2012. (ECF No. 19 at 16 ¶ 11, 25). On July 8, 2012, attorney John
20 McCurley, who had been assigned to Petitioner's case after Mr. Harper left FIA, confirmed the
21 September 8 deadline previously calculated by FIA. He stated, "I looked it up online and could
22 see that the due date of September 8th is correct (take or give a day)--1 year and 90 days." (ECF
23 No. 22 at 34).

24       In late July and August 2012, Ms. Carter took significant time off from managing FIA
25 due to her younger sister's illness and death, her 85-year-old mother's illness, and her own

---

[4] In a letter dated October 10, 2011, FIA acknowledged the donation of Petitioner's parents and stated that FIA "is an IRC Section 503(c)(3) organization, and all donations are tax deductible under Federal and State tax laws." (ECF No. 51 at 9). However, in a November 14, 2011 post on its website, FIA stated that it was "currently in the process of seeking tax-exempt status under Internal Revenue Code § 501(c)(3) and equivalent provisions of the California Revenue & Taxation Code." (ECF No. 51 at 4).

illness and surgery.[5] (ECF No. 22 at 5 ¶ 16, 42). In late August 2012, Ms. Carter interviewed attorney Alexandra Krakovsky, who indicated she could take over Petitioner's case[6] and have the petition timely filed. (Id. at 5 ¶ 17). On August 29, 2012, Ms. Krakovsky emailed a draft of the petition to Ms. Carter. (Id. at 46). On August 30, 2012, Ms. Carter gave Ms. Krakovsky her comments on the draft and indicated that Petitioner would have to file her petition pro se as none of the FIA attorneys were admitted to practice in the United States District Court for the Eastern District of California. (Id. at 48). By August 31, 2012, there was an indication that Ms. Krakovsky would apply for admission to practice in this Court since having Petitioner file pro se would likely take longer than September 8. (Id. at 52).

In late August 2012, FIA contacted Mr. Nuttall to facilitate the filing of the petition. (ECF No. 19 at 16 ¶ 7). Mr. Nuttall agreed to assist FIA in the actual filing of the petition, but was to have no other involvement in the case. (Id. at 16 ¶ 9). On September 6, 2012, Natalie Nuttall, an associate with Mr. Nuttall's law office, spoke with Ms. Krakovsky, who confirmed that the petition was due September 7, 2012.[7] (Id. at 28 ¶ 3). Later that day, Ms. Krakovsky emailed to Mr. Nuttall and Natalie Nuttall the petition, which had significant formatting errors and improperly named Mr. Nuttall as Petitioner's attorney of record. (Id. at 28 ¶¶ 4-5, 35-37). Natalie Nuttall called Ms. Krakovsky, who stated that she was unable to be attorney of record because FIA had not provided her with malpractice insurance.[8] (Id. at 29 ¶ 6). Thereafter, Natalie Nuttall called Ms. Carter at FIA's main office, but the number was disconnected. She then called

---

[5] Petitioner requests the Court to take judicial notice under Federal Rule of Evidence 201 of the Order Granting Motion to Dismiss issued in Carter v. County of San Diego, No. 3:13-cv-00289-BTM-JMA (S.D. Cal. Aug. 6, 2013). (ECF No. 50 at 18 n.6). Petitioner contends that Ms. Carter's allegations in that lawsuit establish that Ms. Carter was preoccupied with legal troubles during "the very time period in which [Petitioner] believed that FIA was studiously attending to her [petition], a critical time period when her time for filing the [petition] was about to run out." (Id. at 19). The Court denies the request as "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983). See also Wyatt v. Terhune, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003), overruled on other grounds by Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014).

[6] On August 9, 2012, Mr. McCurley, who had been assigned to Petitioner's case, decided he no longer wished to be an employee of FIA. (ECF No. 22 at 41).

[7] Due to the miscalculation of Saturday, September 8, 2012, as the AEDPA deadline, it was believed that the petition must be filed by the preceding business day, Friday, September 7, 2012. (ECF No. 19 at 9).

[8] Ms. Krakovsky did not remain with FIA due to Ms. Carter's "own legal and personal problems." (ECF No. 22 at 5 ¶ 19).

1  Ms. Carter's mobile number and left a voice message, but Ms. Carter did not return the call. (Id.
2  at 29 ¶ 7).  Mr. Nuttall reluctantly agreed to be the attorney of record solely for the purpose of
3  filing the petition because the deadline was imminent. (Id. at 17 ¶ 13, 29-30 ¶ 8). After working
4  to correct the formatting errors, Mr. Nuttall's office finalized the petition and filed it with the
5  Court on September 7, 2012.

6  During this process, Petitioner stayed in contact with FIA and Ms. Carter. In a letter dated
7  February 27, 2012, Ms. Carter acknowledged receiving a letter from Petitioner "late last week."
8  (ECF No. 51 at 13). Ms. Carter expected a call from Petitioner on May 12, 2012. (ECF No. 22 at
9  22). On June 9, 2012, Petitioner spoke with Ms. Carter. (Id. at 24). Ms. Carter anticipated a call
10 from Petitioner on June 16, 2012. (Id. at 28). On July 3, 2012, Petitioner spoke with FIA civil
11 litigation staff attorney Tila Leibowitz about having mailed some transcripts. (Id. at 30). On July
12 6, 2012, Petitioner spoke with FIA legal research attorney Julie Dupre about mailing more
13 transcripts and inquiring about efforts to contact Mr. Nuttall. (Id. at 32). On July 7, 2012,
14 Petitioner spoke with Ms. Carter and was "very concerned about her September 8 deadline." (Id.
15 at 34). There is also some indication that Petitioner called Mr. Nuttall's office regarding the
16 status of her petition on or around August 29, 2012. (Id. at 44).

17   2.   Applicable Legal Standard

18  In Holland v. Florida, 560 U.S. 631 (2010), the Supreme Court recognized that the
19 AEDPA's statutory limitations period is subject to equitable tolling if a petitioner demonstrates
20 "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary
21 circumstance stood in his way' and prevented timely filing." Holland, 560 U.S. at 649 (quoting
22 Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The Supreme Court "appeared to hold that
23 professional misconduct falling short of abandonment *could* support a claim of equitable tolling,
24 as most circuits at the time, including [the Ninth Circuit], had also held." Luna, 784 F.3d at 648
25 (citing Holland, 560 U.S. at 651-52).

26  In Luna, the Ninth Circuit addressed the effect of Maples v. Thomas, 132 S. Ct. 912
27 (2012), a case involving the procedural default doctrine, on Holland and prior Ninth Circuit cases
28 regarding the equitable tolling doctrine. Luna, 784 F.3d at 648-49. In Maples, the Supreme Court

reaffirmed the general rule that pursuant to well-settled principles of agency law, a petitioner-principal is bound by the negligent actions of his attorney-agent resulting in a state-court procedural default and cannot assert such actions as "cause" to excuse the default. Maples, 132 S. Ct. at 922; Luna, 784 F.3d at 648. However, when an attorney abandons his petitioner-client (thereby severing the principal-agent relationship) and causes default, the petitioner may assert his attorney's negligent actions as cause to excuse the default. Maples, 132 S. Ct. at 924; Luna, 784 F.3d at 648. Finding that Maples did not explicitly overrule Holland and that the panel lacked authority to hold that Maples implicitly overruled Holland, the Ninth Circuit in Luna held that its "cases holding that egregious attorney misconduct of all stripes may serve as a basis for equitable tolling remain good law." Luna, 784 F.3d at 649. Accordingly, attorney misconduct falling short of abandonment may still serve as a basis for equitable tolling,[9] and Petitioner is entitled to equitable tolling if she establishes that (1) she has been pursuing her rights diligently and (2) some extraordinary circumstance stood in her way and prevented her from timely filing. Holland, 560 U.S. at 649.

### 3. Diligence

In order to be entitled to equitable tolling, a petitioner must have exercised "reasonable diligence, not maximum feasible diligence." Holland, 560 U.S. at 653 (citations and internal quotation marks omitted). "The standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011). The Ninth Circuit has recognized "the basic principle that a petitioner's reasonable reliance on an attorney should not prejudice his opportunity to file a habeas petition." Gibbs v. Legrand, 767 F.3d 879, 890 (9th Cir. 2014).

> In a case such as this, where attorney misconduct is the claimed circumstance causing the untimeliness, courts consider, *inter alia,* whether the petitioner expeditiously secured counsel to file the

---

[9] The Court notes that although the Findings and Recommendation (ECF No. 30) addressed Petitioner's Maples abandonment argument, it separately addressed Petitioner's egregious attorney misconduct argument. In rejecting Petitioner's equitable estoppel claim, the Court did not require that Petitioner demonstrate attorney abandonment as a prerequisite to finding an extraordinary circumstance. Rather, the Findings and Recommendation found that the AEDPA deadline was simply miscalculated and there was no willful or knowing deception.

> habeas petition, the frequency and nature of the attorney-client communications, when, in light of the petitioner's education and background, he reasonably should have sought new counsel, and whether the petitioner had the means to consult alternate counsel.

Busby, 661 F.3d at 1013 (internal citations omitted).

In Gibbs, the petitioner lodged a complaint with the state bar due to his attorney's failure to communicate. 767 F.3d at 883. Thereafter, the attorney reached out to the petitioner, and the complaint was dismissed. The attorney filed a state habeas petition in August 2009, and wrote to petitioner in May 2010 promising to forward any receipt of notice from the state supreme court. The petition was denied in June 2010, but the attorney never informed the petitioner. The petitioner wrote to his attorney multiple times before contacting the state supreme court directly in December 2010 and requesting a docket sheet, which is how he discovered that his petition was denied. Id. At that point, the federal deadline had passed. Id. at 888. Although the attorney failed to communicate with the petitioner "over a period of years" and "had abandoned [the petitioner] for periods before," the Ninth Circuit found that the petitioner reasonably relied on his attorney and acted with reasonable diligence during this period. Id. at 887, 890.

Here, Petitioner secured the services of FIA in October 2011, approximately eleven months before the AEDPA limitations period expired. Petitioner made multiple phone calls to FIA and Mr. Nuttall's office, expressed concern about the deadline, and sought the status of her petition. Petitioner also provided FIA with copies of her trial transcripts when Mr. Nuttall's office did not respond to FIA's requests. Given that the untimely filing was caused by a simple two-day miscalculation, Petitioner was in regular communication with FIA, and the petition was filed one day after expiration of the limitations period, there was no reason for Petitioner to seek new counsel nor was there sufficient time to seek new counsel to meet the correct AEDPA deadline. Accordingly, the Court finds that Petitioner exercised reasonable diligence in pursuing her rights.

4. Extraordinary Circumstance

Having concluded that Petitioner exercised reasonable diligence in pursuing her rights, the Court next turns to whether "extraordinary circumstances were the *cause* of [Petitioner's]

1   untimeliness." Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010) (quoting Spitsyn v. Moore,
2   345 F.3d 796, 799 (9th Cir. 2003)). In the instant case, the untimely filing was caused by the
3   miscalculation of the AEDPA deadline. On July 8, 2012, attorney John McCurley independently
4   assessed the filing deadline for Petitioner's federal habeas petition and confirmed that FIA's
5   prior calculation of "September 8th is correct (take or give a day)." (ECF No. 22 at 34). Attorney
6   Roger Nuttall, who ultimately filed the petition, subsequently relied on this miscalculation and
7   failed to correct it despite having the opportunity to do so. Although Petitioner asserts that the
8   alleged unauthorized practice of law, false representations regarding Ms. Carter's possible
9   reinstatement into the California State Bar and FIA's tax-exempt status, Ms. Carter's undue
10  influence over Petitioner, and Ms. Carter's preoccupation with her personal and legal problems
11  constitute an extraordinary circumstance, Petitioner has not established the required nexus
12  between these acts and the miscalculation of the filing deadline which caused the untimely filing.

13          Petitioner argues that previous pleadings failed to stress that the conduct of FIA amounts
14  to more than garden-variety attorney negligence; it amounts to the unauthorized practice of law.
15  (ECF No. 50 at 9). Although Ms. Carter resigned from the California State Bar with charges
16  pending in 1997 and has not been reinstated, Petitioner contends Ms. Carter managed
17  Petitioner's case as if she were a supervising attorney. For example, the communications from
18  April to September 2012 between Ms. Carter and FIA staff and attorneys demonstrate that Ms.
19  Carter was acting as "a managing attorney trying to delegate aspects of the legal representation
20  to underlings under her general supervision." (Id. at 13). In addition, Petitioner notes that on
21  August 29, 2012, Ms. Krakovsky sent a draft of the habeas petition to Ms. Carter asking for Ms.
22  Carter's thoughts, rather than the non-attorney sending a proposed petition to the attorney for
23  review. The following day, Ms. Carter concluded that Petitioner would have to file the petition
24  pro se given that none of the FIA attorneys were admitted to practice in the United States District
25  Court for the Eastern District of California. Petitioner argues that such a conclusion demonstrates
26  how Ms. Carter "arrogated to herself the role of supervising attorney when in fact she is
27  unauthorized to practice law." (Id.). Petitioner summarizes:

28

> In short, a fiasco has occurred, with mis-computed filing deadlines, attorneys not specifically retained directly by the client haphazardly assigned at various points and times to prepare a portion of the writ, and always at the helm of FIA was an unlicensed attorney directing helter-skelter legal traffic.
>
> This is not attorney negligence. This is shocking conduct on the part of Carter and FIA, who are engaging in the unlawful practice of law by making fitful attempts to compute due dates without the benefit of an attorney properly admitted to the Eastern District appointed to handle the case.

(Id. at 14).

Petitioner also contends that the acts of FIA appear to be fraudulent. Petitioner argues that "Carter was a convicted felon who falsely represented to [Petitioner] that she was about to be reinstated into the good graces of the California State Bar" and that "the bond of amity forged between [Petitioner] and Carter while both were locked up together in prison gave leverage to Carter to beguile [Petitioner] into believing that the [petition] would be timely and properly filed." (ECF No. 50 at 18, 19). Further, Petitioner notes that FIA misrepresented itself as a nonprofit entity in the letter acknowledging the donation of Petitioner's parents when in fact it had yet to receive tax-exempt status under the Internal Revenue Code. (Id. at 16).

The Supreme Court has "held that a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling." Holland, 560 U.S. at 651-52 (internal citations and quotation marks omitted). See also Lawrence v. Florida, 549 U.S. 327, 336 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."); Miranda v. Castro, 292 F.3d 1063, 1067 (9th Cir. 2002) (attorney's miscalculation of limitations period did not constitute extraordinary circumstances); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (holding that an attorney's general negligence and miscalculation of limitations deadline did not constitute extraordinary circumstances that warranted equitable tolling in a non-capital habeas case). Although it is unclear who made the initial deadline calculation of September 8, the record submitted by Petitioner establishes that attorney John McCurley independently calculated the deadline on July 8, 2012 for FIA, and confirmed that "the due date of September 8th is correct (take or give a

1 day)--1 year and 90 days." (ECF No. 22 at 34). Mr. McCurley correctly identified that the petition would be due one year and ninety days from when the California Supreme Court denied review, but he failed to precisely calculate the exact day on which the limitations period would expire. When Mr. Nuttall agreed to file the petition, his office relied on FIA's miscalculated deadline and there is no indication in the record that Mr. Nuttall or his office made an independent deadline calculation. (ECF No. 19 at 28 ¶ 3).

Despite having met Ms. Carter when they served time together in prison and being aware of Ms. Carter's unlicensed status with the California State Bar, Petitioner affirmatively sought Ms. Carter's assistance with her federal habeas petition. Seeking this type of representation with a fledgling organization on such an important issue was fraught with potential adversity for Petitioner. Nevertheless, Ms. Carter's alleged unauthorized practice of law did not cause the miscalculation. FIA's inability to assign an attorney to Petitioner's case for more than a transitory period of time did not cause the miscalculation. The fact that none of FIA's attorneys were admitted to practice in this Court did not cause the miscalculation. FIA's representations regarding its tax-exempt status did not have any bearing on the miscalculation. Any alleged improper leverage Ms. Carter exercised based on her relationship with Petitioner from their shared time in prison did not affect the calculation of the AEDPA deadline. Ms. Carter's alleged preoccupation with her personal and legal problems during late July and August 2012 was irrelevant to the miscalculation, which was made initially by FIA in May 2012 and independently confirmed by attorney John McCurley in early July 2012. Ms. Carter's representations regarding her attempts to be reinstated into the California State Bar did not have any effect on the deadline miscalculation. The Court notes that although Petitioner contends that Ms. Carter "falsely represented to [Petitioner] that she was about to be reinstated into the good graces of the California State Bar," (ECF No. 50 at 18), the record establishes that Petitioner was fully aware that Ms. Carter did not have an active license to practice law and there is no

indication Ms. Carter deceived Petitioner regarding her *attempts* to be reinstated into the California State Bar.[10]

Petitioner's reliance on Holland is unavailing as it is distinguishable from the instant case. In Holland, the petitioner's attorney failed to timely file a federal habeas petition despite the petitioner's numerous letters emphasizing the importance of timely filing. The attorney was unaware of the limitations deadline and did not do the research necessary to calculate the filing deadline despite the petitioner's letters identifying the applicable legal rules. The attorney failed to timely inform the petitioner that the state court had decided his case despite the petitioner's numerous inquiries, and the attorney failed to communicate with the petitioner over a period of years. Holland, 560 U.S. at 652. The Supreme Court suggested that these facts would be sufficient to establish an extraordinary circumstance warranting equitable tolling. Id. at 652-54. Here, FIA did the necessary research and correctly identified the statutory limitations period applicable to Petitioner's federal habeas petition, but it miscalculated the precise deadline by two days. See id. at 652 (attorney's unawareness of the date on which the limitations period expired and failure to file timely petition were "two facts that, alone, might suggest simple negligence").

Petitioner also relies on Dillon v. Conway, 642 F.3d 358 (2d Cir. 2011), and argues equitable tolling may be warranted if an attorney's errors involve more than a simple miscalculation. However, Dillon is distinguishable from the facts present in this action. In Dillon, the attorney affirmatively and knowingly misled his client by promising not to wait until the last day of the limitations period to file the petition. 642 F.3d at 364. Here, Petitioner was never deceived by FIA or Mr. Nuttall as to when the petition would be filed. Rather, FIA miscalculated the filing deadline and Mr. Nuttall did not remedy the error. Thus, because there was no willful or knowing deception by any counsel the holding in Dillon is distinguishable.

Additionally, Luna is distinguishable from the instant case. The Ninth Circuit found that Luna made a showing of extraordinary circumstance based on his counsel's egregious

---

[10] In support of her contention that Ms. Carter falsely represented that she was about to be reinstated, Petitioner relies on a letter dated November 20, 2012, in which Ms. Carter states, "I am close to getting my license reinstated!" (ECF No. 51 at 11). However, this statement was made after the petition already had been filed and more than two months after the AEDPA limitations period expired. Accordingly, it is irrelevant as to the deadline miscalculation and whether an extraordinary circumstance caused Petitioner's untimeliness.

professional misconduct, which included: voluntarily dismissing Luna's timely pro se federal habeas petition after securing a stay and abeyance because counsel erroneously believed that all of the claims were unexhausted; three weeks before the statute of limitations expired, misleading Luna to believe that a fully exhausted federal habeas petition would be filed "shortly"; and affirmatively misleading Luna for more than six years that litigation of his federal habeas petition was moving forward when in fact nothing had been filed in federal court and the statute of limitations already had expired. Luna, 784 F.3d at 646-48. In the instant case, FIA correctly identified the statutory limitations period applicable to Petitioner's federal habeas petition but miscalculated the precise deadline by two days, Mr. Nuttall relied on the miscalculation and did not correct it, the petition was filed one day after the limitations period expired, and there was no willful or knowing deception or affirmative misleading regarding the filing deadline and whether a petition would be filed within the calculated time period.

"'[G]arden variety claim[s] of excusable neglect'—such as 'simple miscalculation' of time limits—do not constitute an extraordinary circumstance." Gibbs, 767 F.3d at 885 (second alternation in original) (quoting Holland, 560 U.S. at 651-52). Accordingly, the Court finds that Petitioner has not satisfied her burden to establish that an extraordinary circumstance caused the untimeliness of her petition.

5. Conclusion

With regard to deadlines and statutes of limitations, the Supreme Court has acknowledged:

> If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it. Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.

United States v. Locke, 471 U.S. 84, 101 (1985).

Equitable tolling sets "a very high bar, and is reserved for rare cases," Yeh v. Martel, 751 F.3d 1075, 1077 (9th Cir. 2014), where "'extraordinary circumstances beyond a prisoner's

1 control make it *impossible* to file a petition on time' and 'the extraordinary circumstances were the *cause* of [the prisoner's] untimeliness.'" Bills, 628 F.3d at 1097 (alteration in original) (quoting Spitsyn, 345 F.3d at 799). It is undisputed that FIA miscalculated the AEDPA filing deadline and that Mr. Nuttall and his office relied on the miscalculation and did not correct it. There is no causal connection between the untimely filing and Petitioner's assertions of alleged unauthorized practice of law, false representations, and Ms. Carter's undue influence and preoccupation with personal and legal problems, because these acts did not affect the AEDPA deadline miscalculation. As previously stated, such simple miscalculation is not the type of "extraordinary circumstance" to warrant equitable tolling. Holland, 560 U.S. at 651-52. As both prongs of the equitable tolling standard must be satisfied and Petitioner has failed to meet one of them, Petitioner is not entitled to equitable tolling.

**C. Evidentiary Hearing**

In the alternative, Petitioner requests an evidentiary hearing. (ECF No. 50 at 17). There is no basis for the Court to conduct an evidentiary hearing. Because the Court has found that Petitioner's allegations and the evidence submitted do not justify equitable tolling, an evidentiary hearing is unnecessary. See Orthel v. Yates, 795 F.3d 935, 940 (9th Cir. 2015) ("further factual development may be required when a petitioner makes a good-faith allegation that tolling is warranted, depending on the sufficiency of the record that was before the district court"); Roy v. Lampert, 465 F.3d 964, 969 (9th Cir. 2006) ("A habeas petitioner . . . should receive an evidentiary hearing when he makes 'a good-faith allegation that would, if true, entitle him to equitable tolling.'" (quoting Laws v. Lamarque, 351 F.3d 919, 919 (9th Cir. 2003))).

**III.**

**RECOMMENDATION**

As there is no basis for an evidentiary hearing and Petitioner is not entitled to equitable tolling, Respondent's motion to dismiss should be granted on the ground that the instant petition for writ of habeas corpus was filed beyond the one-year statute of limitations.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss the instant petition for writ of habeas corpus be

      GRANTED; and

      2. The instant petition for writ of habeas corpus be DISMISSED with prejudice.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 16, 2016**

                                          UNITED STATES MAGISTRATE JUDGE